**LONDON & MEAD**
ATTORNEYS AT LAW

1225 19TH STREET, N.W.
SUITE 320
WASHINGTON, D.C. 20036

TELEPHONE (202) 331-3334
TELEFAX (202) 785-4280

March 19, 2010

***Via ECF and Electronic Mail***
Ilene Jaroslaw
John Nowak
Assistant U.S. Attorneys
U.S. Attorney's Office for the Eastern District of New York
Criminal Division
271 Cadman Plaza East
Brooklyn, New York 11201-1820

   Re: *United States v. Zev Saltsman, et al.*

Dear Ilene and John:

  I write in response to your letter dated March 18, 2010. Thank you for confirming that Andrew Brown's plea agreement does not implicate Xybernaut or Dr. Steven Newman, and that Zev Saltsman's plea agreement does not implicate Brown or Ramp. Unless I hear from you to the contrary, I will assume this means that in statements to the Government, Brown and Saltsman denied participating in a single conspiracy to defraud the shareholders of Ramp and Xybernaut.

  Without citing a single case or rule to support your position, you have denied my request for Saltsman and Brown's plea agreements because they are not public, do not contain *Brady* material, and "cannot conceivably be material to the preparation" of Dr. Newman's defense. Your letter mischaracterizes my argument and misstates the appropriate standard for disclosure under New York Court of Appeals Rule of Professional Conduct 3.8.

  Rule 3.8(d) requires a prosecutor to disclose any evidence or information to defense counsel that "*tends* to negate the guilt of the accused, mitigate the degree of the offense, or reduce the sentence . . . ." (emphasis added). Unlike *Brady*, Rule 3.8(d) does not have a materiality requirement. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (recognizing that Rule 3.8 imposes a higher standard than *Brady*). Under Rule 3.8, if evidence *tends* to indicate innocence, the Government must disclose it, even if the prosecutor believes in good faith that the evidence will not have any impact at trial.

  Further, United States Attorney's Manual section 9-5.001 C. (1) adopts this very standard, and requires prosecutors to disclose:

LONDON & MEAD
ATTORNEYS AT LAW

Ilene Jaroslaw
John Nowak
March 19, 2010
Page 2

      information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, **regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.** (Emphasis added.)

      My letter never suggested that the Brown and Saltsman plea agreements would be dispositive of Dr. Newman's Motion to Reformulate and Sever. Instead, the letter stated that the plea agreements are inconsistent with a single conspiracy charge and *"tend* to indicate that Dr. Newman is innocent of all Ramp related charges." For all the reasons you mentioned, Judge Garaufis might not find that argument persuasive. But that is not for you to decide, and it is not the standard under Rule 3.8. Instead the question is whether the plea agreements *tend* to indicate the existence of two conspiracies.

      Here, the Government has yet to allege a single fact indicating that the Ramp and Xybernaut schemes formed one conspiracy. The silence of Brown and Saltsman's plea agreements regarding any connection between the Xybernaut and Ramp schemes further confirms that the two schemes were distinct and independent. That Brown or Saltsman could hypothetically have pled guilty to a broader conspiracy encompassing Ramp and Xybernaut goes to the weight of the inference, not the inference itself. Accordingly, the plea agreements *tend* to indicate that two conspiracies existed and that Dr. Newman is innocent of all Ramp-related charges.

      Further, Rule 3.8 requires the Government to disclose evidence or information that tends to "reduce the sentence" of the accused. Sentencing courts must follow the factors enumerated in 18 U.S.C. § 3553(a), one of which is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Dr. Newman is entitled to see the factual basis for Brown and Saltsman's plea agreements and any stipulations to guidelines factors. If Dr. Newman is convicted, the plea agreements with Saltsman and Brown will be factors that could reduce his sentence.

      Your letter also ignores the Fifth Amendment's Due Process Clause, which requires the Government "to disclose to the defense and to the trial jury the existence of plea bargaining negotiations with a key witness." *United States v. Fontenot*, 483 F.2d 315, 325 (5th Cir. 1973). Disclosing the plea agreement enables the defense to cross-examine the witness about motivations for testifying, any tangible benefits gained from incriminating other defendants, and the possibility that the cooperating witness is merely shifting blame. The Government's failure to disclose a plea agreement violates a defendant's due process rights and is grounds for reversal. *See Giglio v. United States*, 405 U.S. 150, 155 (1972).

**LONDON & MEAD**
ATTORNEYS AT LAW

Ilene Jaroslaw
John Nowak
March 19, 2010
Page 3

It is clear that the Government has interviewed Brown, Saltsman, and ATTORNEY-1. I am confident that your interview notes contain information and statements that would "tend" to disprove some of the allegations in the Superseding Indictment, particularly your single conspiracy theory. We need that information now, while we are briefing the motion to sever.

Rule 3.8 and the U.S. Attorney's Manual impose obligations on federal prosecutors that virtually mandate broad discovery in complex cases, because prosecutors cannot possibly conclude that each statement in a lengthy witness interview would not "tend to negate the guilt of the accused." Just as a few examples, any statements by witnesses tending to indicate that Saltsman or Eitan did not own a majority share in any of the alleged "nominee entities," that board members or executives at Ramp or Xybernaut knew that Saltsman and Eitan were associated with the alleged "nominee entities," that Xybernaut or Ramp were attempting to find other potential PIPE investors, any evidence of less favorable PIPE terms offered by other potential investors, or any statements that board members or executives at Ramp or Xybernaut viewed the PIPEs described in the Indictment as appropriate and/or necessary for the companies, would all "tend to negate the guilt of the accused." We cannot possibly identify every category of Rule 3.8 material in your possession, because we don't know what witnesses have told you.

Accordingly, we ask that the Government provide all notes taken during interviews of Brown, Saltsman, Attorney-1, and any other witnesses who have information that would "tend" to disprove the allegations in the Indictment. This is not a case involving allegations of violence or coercion. Government witnesses will not suffer any adverse consequences from timely disclosure.

As my first letter said, this correspondence is not intended as a personal attack. I want to emphasize that I am not accusing you of bad faith in any way. These are not easy standards for overworked prosecutors to apply in cases like this one, which involve dozens of witnesses and millions of pages of documents. I did not file my previous letter with the Court, because I viewed it as a private, good faith dialogue between adversaries at the bar. However, because you filed your response with the Court, and because that response appeared to misstate the relevant standards for disclosure under Rule 3.8, I feel it appropriate to file this reply with the Court.

Please let me know at your earliest convenience whether, and when, you will disclose the Rule 3.8 materials described in this letter.

Sincerely,

Christopher B. Mead