**BAKER & M<sup>c</sup>KENZIE**

Baker & McKenzie LLP

300 East Randolph Street, Suite 5000
Chicago, IL 60601
United States

Tel: +1 312 861 8000
Fax: +1 312 861 2899
www.bakermckenzie.com

**Asia Pacific**
Bangkok
noi
Ho Chi Minh City
Hong Kong
Jakarta*
Kuala Lumpur*
Manila*
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**Latin America**
Bogota
Brasilia*
Buenos Aires
Caracas
Guadalajara
Juarez
Lima
Mexico City
Monterrey
Porto Alegre*
Rio de Janeiro*
Santiago
Sao Paulo*
Tijuana
Valencia

**North America**
Chicago
Dallas
Houston
Miami
New York
Palo Alto
San Francisco
Toronto
Washington, DC

* Associated Firm

March 29, 2013

William Linklater
Tel:  +1 312 861 2794
william.linklater@bakermckenzie.com

The Honorable Nicholas G. Garaufis
United States District Court
For the Eastern District of New York
Room 1416 S
225 Camden Plaza East
Brooklyn, New York  11201

Re:  US v Saltsman (1:07-cr-00641-NGG)

Dear Judge Garaufis:

    I am a partner in Baker & McKenzie (" Baker" or the "Firm") and, during all relevant times, served as the Firm's director of professional responsibility and Counsel. In that capacity, I had oversight responsibility for the Firm's handling of internal and external matters that arose following the Firm's discovery in October 2007 that Martin Weisberg, who joined the Firm as a partner in 2005, had been indicted in the above-referenced matter.  In particular, I oversaw the Firm's extensive internal investigation into a variety of activities Mr. Weisberg engaged in while a partner in the Firm.  Having reviewed the sentencing memorandum submitted on Mr. Weisberg's behalf, I thought it would be appropriate to provide the Court, in aid of sentencing, with information concerning Mr. Weisberg's activities during his tenure with the Firm and the harm he caused to the Firm.  I have personal knowledge of the matters set forth below based upon my involvement in the Firm's efforts to investigate and to address Mr. Weisberg's actions while he was employed as a partner in the Firm.

    First, we bear Mr. Weisberg no ill will, and are not vindictive; we have long since moved on and put all this squarely behind us.  We are writing our letter, at the prosecutor's request, only to provide another perspective to fill out the picture, and with confidence that the Court will do justice.

    We are embarrassed that in our diligence of Mr. Weisberg we did not uncover the negative experiences in his past that he failed to disclose to us.  This has been a painful eye-opener for us, and has resulted in some changes in the way we do things.

    We at Baker care most deeply about our profession, about our system of justice, and about practicing our profession with the utmost professionalism and ethics.  Mr.

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

**BAKER & McKENZIE**

Weisberg does not represent who we are. His conduct is well beneath what we expect of ourselves and one another, and well beneath what clients and others should expect of our profession. What he has done is bad for all lawyers, and the public – the people lawyers serve -- deserve better.

In providing the information below, the Firm is constrained by attorney-client privilege and other considerations from providing details, and this letter is not intended to constitute, and does not constitute, a waiver if the Firm's attorney-client privilege, work product protection or other applicable protections.

Though the sentencing memorandum submitted on behalf of Mr. Weisberg portrays him as a careful and honest lawyer, the Firm's experience with him presents a wholly different story. The letters submitted by Mr. Weisberg's family and friends paint a picture of how they might want Mr. Weisberg to be perceived, but they are also evidence that he was thoroughly capable of concealing his darker side. The "Marty" they describe is not the same man who, among other things, upon learning that he had been indicted and would be arrested when he landed at JFK airport, cajoled a foolish partner into carrying an unopened briefcase containing who knows what onto an international flight across borders, ultimately contributing to our decision to let that partner go.

Indeed, when he began with the Firm, Mr. Weisberg failed to disclose that he was then the subject of an investigation by the Department of Justice concerning Xybernaut or that he had testified before the Securities & Exchange Commission in its related investigation. In addition to withholding that information from the Firm until he was indicted in October 2007, he then falsely denied that he had brought any of the clients involved in that indictment with him to the Firm. Upon learning of the indictment, the Firm immediately asked him to resign.

Following the indictment, the Firm, with the assistance of outside counsel, conducted a detailed investigation into Mr. Weisberg's activities while he was a member of the Firm. During the course of that investigation, the Firm learned of numerous instances where Mr. Weisberg worked for clients he knew were of questionable character (at least one of which had pled guilty to a federal crime), failed to make appropriate disclosures to the Firm, opened unauthorized escrow accounts for Firm clients, violated other clear Firm policies and procedures and engaged in other highly questionable activities that were inconsistent with the stringent ethical standards to which the Firm adheres. Those discoveries led the Firm ultimately to take the unusual step of providing the Department of Justice and the Securities & Exchange Commission with information concerning a variety of Mr. Weisberg's activities. In fact, it was the Firm that discovered

BAKER & McKENZIE

the escrow account and payments that are the subject of the second indictment of Mr. Weisberg and brought those matters to the attention of the Government.

Mr. Weisberg's activities have not only harmed the Firm's reputation but also have had a direct financial impact on the Firm and its partners. First, the Firm expended considerable funds investigating myriad activities, as initial inquiries into Mr. Weisberg's actions on behalf of certain clients led to broader questions concerning his activities on behalf of other clients. Moreover, the Firm was required to spend significant additional sums in producing documents and witnesses to the Department of Justice in connection with its investigation into Mr. Weisberg's handling of escrow account he established for former client SIAM without the Firm's knowledge or consent and in contravention of applicable policies. Second, apart from the reputational issues associated with client suits, the Firm was injured in having to defend two publicly filed lawsuits filed by former clients. In the first, a suit brought by SIAM arising out of the escrow account Mr. Weisberg established, the Firm eventually settled the case by making a substantial payment to the former client. A second case was filed by another former client of Mr. Weisberg, alleging that he had engaged in fraud in connection with that client's issuance of stock to and at the behest of former insiders (one of whom pled guilty to criminal charges in NY State Court and the other of whom was found guilty after trial). The Firm also ultimately determined to settle that case for a sizeable sum.

We appreciate the fact that the Court has not heard evidence concerning the Firm's investigative findings or the allegations brought against the Firm by former Weisberg clients. Moreover, we are reluctant to air publicly the other concerns the Firm identified as a result of its inquiries into Mr. Weisberg's conduct. Nevertheless, we thought it appropriate to ensure that the Court is aware that Mr. Weisberg betrayed the trust the Firm and its partners placed in him and, from the outset, engaged in a continuum of clandestine activities that were wholly incompatible with his duties to the Firm and its clients. The Firm works hard at maintaining its reputation and cannot express strongly enough its distaste for misconduct by a lawyer, let alone one who concealed his prior transgressions when joining the Firm and who thereafter sullied its good name by repeated instances of unprofessional , if not illegal, activities.

The Firm regrets having made Mr. Weisberg a partner and continues to deal with the aftermath of that mistake. Although we recognize that the Court has numerous factors to weigh in imposing what it believes to be an appropriate sentence, the Firm respectfully requests that the Court give due consideration to the harm Mr. Weisberg brought upon the Firm in the short period of time he practiced with us.

BAKER & McKENZIE

We appreciate the Court's interest in the Firm's views and are prepared to provide further information to the extent that the Court believes it would be helpful.

Respectfully submitted,

William Linklater

cc: AUSA Ilene Jaroslaw
    Elkan Abramowitz
    George A. Stamboulidis

3187006-v1